SCHOPFLOCHER et al. v. MACHENBACH.

(Supreme Court, Appellate Term. January 27, 1910.)

1. APPEAL AND ERROR (§ 1002*)—VERDICT—CONCLUSIVENESS.

A verdict on sharply conflicting evidence will not be disturbed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

2. SALES (§ 382*)—BREACH OF CONTRACT—EVIDENCE.

Where, in an action for breach of contract for the purchase of merchandise to be manufactured, it appeared that the contract included prior or-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ders by the buyer for goods to be manufactured by the seller, the proof of damages properly included the prior orders.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 382.*]

Dayton, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Herman Schopflocher and another against Ernest Machenbach. From a judgment for plaintiffs, entered on a verdict, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GIEGERICH, DAYTON, and LEHMAN, JJ.

Breen Bros. (Henry J. Breen, of counsel), for appellant.

Adam K. Stricker, for respondents.

LEHMAN, J. Although the transaction is somewhat involved and the testimony somewhat confused, I think that the inference can be fairly drawn from the evidence that the defendant, on March 4 and 18, 1907, ordered goods from the plaintiffs, which were to be manufactured or procured by the plaintiffs' Japanese correspondents. It was contemplated by the parties that the orders were not to be absolute until the plaintiffs' letters to their correspondents should arrive in Yokohama. Apparently on March 18th the defendant had determined to take at least the quantity ordered on March 4th, and the order to that extent became binding upon the receipt of the letter of that date in Yokohama. The intent of the parties, however, was to enter into a larger binding contract before the arrival in Yokohama of the letter of March 18th, which contract should include at least the order of March 4th. On April 9th, and just previous to the arrival of the letter of March 18th in Yokohama, the parties seem to have agreed that the entire orders of March 4th and March 18th should be binding, and all these goods are included in the contract which became effective on that date. While there is a sharp conflict of testimony between the parties, and neither side tells a story free from inconsistencies, it seems to me that the verdict is not against the weight of evidence.

The proof of damages properly included the propositions of both March 4th and March 18th, because both were included in the contract of April 9th, and the trial justice excluded evidence as to the order of March 4th only because it became part of the subsequent contract.

The judgment and order should be affirmed, with costs.

GIEGERICH, J., concurs.

DAYTON, J. (dissenting). I think a critical examination of this record discloses that the plaintiffs have so failed to sustain their burden of proof as to require a reversal of the judgment. As only one of the plaintiff firm testified and was personally engaged in the transactions involved, for convenience he is designated herein as plaintiff.

The action is for the breach of a contract for the purchase of merchandise to be manufactured into particular articles, alleged to have

been entered into on or about April 9, 1907. Plaintiff first introduced defendant as his own witness, and his testimony was directly contradictory of that which plaintiff himself gave. Plaintiff's theory, and his testimony in support thereof, was that on March 4, 1907, defendant gave plaintiff an order for certain goods (which were to be procured and manufactured in Japan) on terms, "3 or 4 months—letter of credit," in favor of a Japanese house; that defendant was to examine the samples further and make up another order, and that on March 18th he handed the plaintiff such further order or specifications, doubling the first order and adding several other items; that on March 4th, when the first order was given, plaintiff sent it to Japan in order to save time and cable expenses (Plaintiff's Exhibit 9), and that the same course was pursued in the case of the order of the 18th (Plaintiff's Exhibit 10); that on April 10th, at about which time it was estimated the letter and order of March 18th would reach Yokohama, plaintiff made out an itemized statement of the articles covered by the foregoing transactions and handed it to defendant, inclosed in a letter addressed to defendant, which designated the inclosure as "copy of your kind order," and which plaintiff terms a confirmation of the order; that defendant, after reading these papers, said in effect that it was all right, and that he would proceed to get for plaintiff the letter of credit according to one of the terms of the contract of sale.

The said letter is Plaintiff's Exhibit 1 in the record, and the inclosure is his Exhibit 8. This last transaction plaintiff claims is the contract. The first sheet of Exhibit 8, covering the order of March 4th, is dated March 28th, and the second, third, and fourth sheets, covering the order of March 18th, are dated April 9th, apparently in accordance with plaintiff's explanation that the letters carrying such orders to Japan reached their destination in due course of such mail in about three weeks. It will be noted that the first sheet (the first order) covers only five items or patterns, namely, Nos. 3,469, 3,470, 2,940, 3,183, and 3,291. These patterns plaintiff swears are the ones ordered on March 4th, and the quantities of these patterns are double those as ordered on March 4th, on account of the order of March 18th. It will also be seen that the second, third, and fourth sheets of said Exhibit 8, dated April 9th, do not contain these items, but do contain the other items which plaintiff says were added to the order March 18th.

Bearing in mind that it was only the five patterns above enumerated which plaintiff sent to Yokohama on March 4th, the manufacturer at that place, testifying by deposition, exhibits what he says was the order sent to him in that letter (Exhibit 15, proposition "A"); and we find these not only the patterns which plaintiff says were covered by that order, in quantities then fixed, but also the items of patterns Nos. 3,384, 3,342, 3,278, and 3,264, which, according to plaintiff's testimony, were not covered by the order of March 4th; and these last items are on his list (Exhibit 8) of April 9th, and that list, from his testimony covers the additional items of March 18th, and therefore could not have been included in the list which he forwarded to Japan on March 4th.

Further, and in connection with this discrepancy, plaintiff swears that the transactions of March 4th and 18th were unconditional or-

ders, yet his own letters in which these orders were forwarded to Japan contradict him flatly on that point. The letter of March 4th says:

"New York, March 4, 1907.

"Messrs. W. Schopflocher & Co., Yokohama, Japan—Gentlemen: We have been working since quite some time with the Machenbach Importing Company, who are undecided at this moment whether they will restrict themselves in ordering Drawn Linens and Renaissance to a few sizes only or to all sizes of the respective patterns. Mr. Machenbach worked out with me to-day the following as per proposition A attached in order to save time. Should, by the time this letter reaches Yokohama, the deal have fallen through, we would cable Machenbach. If you do not hear from us the word 'Machenbach' by March 27/28th, when this letter arrives at Yokohama, then enter the order.

"Yours truly,                                        Schopflocher Bros."

The letter of March 18th says:

"New York, March 18, 1907.

"Messrs. W. Schopflocher & Co., Yokohama, Japan—Gentlemen: Mr. Machenbach worked out with me to-day the following proposition, marked 'proposition B,' in order to save time and unnecessary expenses. As matters stand at this moment, Mr. Machenbach is undecided, and has to await the return of his son from the road. If on receipt of our letter to you of March 4, 1907, we do not cable 'Machenbach,' then the proposition A is to be considered as a cable order, and goods to be entered as an order. If the proposition B is not to be considered as an order, we would cable you on receipt of this, our letter of to-day, the word 'Nuranotbe.' If, however, Mr. Machenbach wants goods on proposition B only, then you must adjust and arrange matters over there—to order only enough goods on the proposition B that the total of goods ordered on proposition A and part of proposition B does not exceed the total quantities of proposition B. Be careful: If on receipt of this letter you do not hear from us the word 'Nuranotbe,' then as far as we and the Machenbach Import. Co. is concerned, patterns and quantities on proposition A have to be deducted by you on the quantities ordered on proposition B.

"Yours truly,                                        Schopflocher Bros."

It is significant that if the last contract was in fact made on March 18th in the manner as plaintiff swears, he should have returned to defendant the practical and proper evidence of that transaction, namely, the signed memorandum which plaintiff says was made by defendant and delivered to him on that date; that he should have resorted to the unusual method of handing back the real order and presenting a letter with a statement of items three weeks after the date of the order, purporting to confirm that order. Plaintiff's explanation is that the order in due course would reach Japan in three weeks, and therefore on April 10th he handed back the written memorandum made by defendant himself, and gave defendant a letter confirming the order. This explanation is not satisfactory, especially in view of defendant's express denial of the transaction and plaintiff's letters above set out. There is nothing to show that the undecided condition of defendant's mind, described in plaintiff's letter of March 18th, had changed, or that anything had occurred to change the conditions existing when that letter was written, except the alleged transaction of April 10th.

Plaintiff's testimony as to the transactions which he detailed is not supported by any direct evidence, and it does not seem that the circumstance that defendant was making efforts to get a letter of credit is of much corroborative force. Plaintiff says defendant spoke of

getting the letter of credit from day to day, in numerous conversations up to about May 22d; but it appears from defendant's testimony, and from his letter of May 6th, that he had bought the goods elsewhere, and on April 16th he had written plaintiff "calling the deal off." Defendant says the last letter related to the transaction of March 4th, and this is consistent with the plaintiff's letter of that date to his Yokohama correspondent, already referred to. Defendant's version, that there was no positive order given, but that the parties were merely trying to arrive at a proper assortment of sizes and patterns, is not inconsistent with his attempts to arrange for a letter of credit, which he was required to furnish if an order should be finally made up and given; but, on the other hand, if a seller makes a letter of credit one of the terms upon which he will sell $15,000 of goods to be manufactured and imported, is it probable that he will let the order go to execution, not only when he has not received the letter of credit, but with knowledge that the purchaser was having difficulty in procuring it?

Defendant swears that he never gave an order; that the transactions between him and plaintiff consisted merely in selecting patterns and fixing upon proper assortments of sizes and quantities, if an order should be given finally. In this he is corroborated by plaintiff's letters of March 4th and 18th to the Yokohama correspondent, already set out, and I think he is also corroborated by the circumstance, already referred to, that the letter of credit, which plaintiff swears was one of the terms of the sale, was not given. Defendant also denies plaintiff's story as to the transaction on April 10th, but says that he received the letter of that date by mail, and that the inclosure mentioned (Exhibit 8) was handed to him by plaintiff on the next day; that he then told plaintiff he had given no order, and returned to him the papers purporting to cover the items of such order. In this he is corroborated by his receiving and shipping clerk, who swore that he had seen plaintiff in defendant's place of business several times; that about April 10th or 11th he saw him there, in the office room, and heard parts of a conversation between plaintiff and defendant at that time; that plaintiff said, "This is the order;" and defendant said, "See here, Schopflocher; we never ordered these goods; take it all back;" and that he saw a piece of paper pass between them.

The proof is not sufficient to justify the judgment against the defendant for $1,500. The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.